UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DAKOTA RURAL ACTION, DALLAS GOLDTOOTH, INDIGENOUS ENVIRONMENTAL NETWORK, NDN COLLECTIVE, SIERRA CLUB, and NICHOLAS TILSEN, Plaintiffs, | ) ) ) ) ) ) ) ) ) ) | CIV.19-5026-LLP STATE DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION |
| v. | ) ) ) | |
| KRISTI NOEM, in her official capacity as Governor of the State of South Dakota, JASON RAVNSBORG, in his official capacity as Attorney General, and KEVIN THOM, in his official capacity as Sheriff of Pennington County, Defendants. | ) ) ) ) ) ) ) ) ) ) ) | |

COME NOW, Defendants South Dakota Governor Kristi Noem, and South Dakota Attorney General Jason Ravnsborg, in their official capacities (collectively, State Defendants), by and through their counsel of record, and hereby submit this Memorandum in Support of Their Motion for Judgment on the Pleadings and in Opposition to Plaintiffs' Motion for a Preliminary Injunction.

## INTRODUCTION

Plaintiffs allege that Senate Bill 189, 94th Session, South Dakota Legislature, 2019, "An act to establish a fund to receive civil recoveries to offset

costs incurred by riot boosting, to make a continuous appropriation therefor, and to declare an emergency" (Senate Bill 189 or The Act), and SDCL §§ 22-10-6 and 22-10-6.1 (challenged laws) are unconstitutional, both facially and as-applied. Plaintiffs allege that these laws infringe upon their First Amendment rights to gather and protest. Plaintiffs further allege that the laws violate their rights to due process by failing to provide notice of what conduct constitutes a violation of these laws. State Defendants deny each of these allegations for the reasons set forth below.

As the argument herein will show, State Defendants are entitled to a grant of their motion for judgment on the pleadings, as there are no factual disputes at issue and State Defendants are entitled to judgment as a matter of law. Plaintiffs' motion for preliminary injunction should be denied on similar grounds.

## ARGUMENT

## I. Interpretation of the Act and Related Statutes

In order to proceed with a meaningful analysis of the additional arguments in this case, a correct reading of the statutes at issue must be established.

The case at bar rests on the interpretation of the Act, SDCL §§ 22-10-6, 22-10-6.1, and related statutes. "Statutory interpretation is a question of law." *Minn. Supply Co. v. Raymond Corp.,* 472 F.3d 524, 537 (8th Cir.2006). When interpreting a state statute, a Federal court is bound by that state's rules of statutory interpretation. *Roubideaux v. N. Dakota Dep't of Corr. & Rehab.,* 570

F.3d 966, 972 (8th Cir. 2009) (citing *Fargo Women's Health Org. v. Schafer,* 18 F.3d 526, 530–31 (8th Cir. 1994) (applying North Dakota principles of statutory interpretation in considering the constitutionality of a North Dakota law). Under South Dakota law, in reviewing a statute, "the language expressed in the statute is the paramount consideration." *Olson v. Butte County Commission*, 2019 S.D. 13, ¶ 5, --- N.W.2d ---.

> When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed. When we must, however, resort to statutory construction, the intent of the legislature is derived from the plain, ordinary and popular meaning of the statutory language.

*In re Wintersteen Revocable Trust Agreement*, 2018 S.D. 12, ¶ 12, 907 N.W.2d 785, 789 (citations omitted). The intent of a statute "'must be determined from the statute as a whole, as well as enactments relating to the same subject.'" *In re Taliaferro*, 2014 S.D. 82, ¶ 6, 856 N.W.2d 805, 806-07 (citations omitted). The language set forth in the challenged laws is of paramount importance. It should therefore be examined as a whole, not just as selected portions read in isolation or out of context. To that end, it is reproduced below in total.[1]

Senate Bill 189 in its entirety provides (*see also* Exhibit A attached):

AN ACT

ENTITLED, An Act to establish a fund to receive civil recoveries to offset costs incurred by riot boosting, to make a continuous appropriation therefor, and to declare an emergency.

---

[1] A copy of the Act and challenged laws are also attached as Exhibit A.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF SOUTH DAKOTA:

Section 1. That chapter 20-9 be amended by adding a NEW SECTION to read:

Terms used in this Act mean:

(1)　"Civil recoveries," funds received by the state from any third party as damages resulting from violations of chapter 22-10 that cause the state or a political subdivision to incur costs arising from riot boosting under section 2 of this Act;

(2)　"Person," any individual, joint venture, association, partnership, cooperative, limited liability company, corporation, nonprofit, other entity, or any group acting as a unit;

(3)　"Political subdivision," a county or municipality;

(4)　"Riot," the same as the term is defined under § 22-10-1; and

(5)　"Secretary," the secretary of the Department of Public Safety.

Section 2. That chapter 20-9 be amended by adding a NEW SECTION to read:

In addition to any other liability or criminal penalty under law, a person is liable for riot boosting, jointly and severally with any other person, to the state or a political subdivision in an action for damages if the person:

(1)　Participates in any riot and directs, advises, encourages, or solicits any other person participating in the riot to acts of force or violence;

(2)　Does not personally participate in any riot but directs, advises, encourages, or solicits other persons participating in the riot to acts of force or violence; or

(3)　Upon the direction, advice, encouragement, or solicitation of any other person, uses force or violence, or makes any threat to use force or violence, if accompanied by immediate

power of execution, by three or more persons, acting together and without authority of law.

Section 3. That chapter 20-9 be amended by adding a NEW SECTION to read:

A person is subject to the jurisdiction of the courts of this state for riot boosting that results in a riot in this state, regardless of whether the person engages in riot boosting personally, or through any employee, agent, or subsidiary.

Evidence is not admissible in an action for riot boosting action that shows that any damages, in whole or in part, were paid by a third party. Notwithstanding any other law, any action arising under section 2 this Act is governed by the procedural and substantive law of this state.

Any action for riot boosting shall be for the exclusive benefit of the state, political subdivision, or an otherwise damaged third party, and shall be brought in the name of the state or political subdivision. The state, a political subdivision, or any third party having an interest in preventing a riot or riot boosting may enter into an agreement to establish joint representation of a cause of action under section 2 of this Act.

Section 4. That chapter 20-9 be amended by adding a NEW SECTION to read:

The plaintiff in an action for riot boosting may recover both special and general damages, reasonable attorney's fees, disbursements, other reasonable expenses incurred from prosecuting the action, and punitive damages. A defendant who solicits or compensates any other person to commit an unlawful act or to be arrested is subject to three times a sum that would compensate for the detriment caused. A fine paid by a defendant for any violation of chapter 22-10 may not be applied toward payment of liability under section 2 of this Act.

Section 5. That chapter 20-9 be amended by adding a NEW SECTION to read:

There is established in the state treasury the riot boosting recovery fund. Money in the fund may be used to pay any claim for damages arising out of or in connection with a riot or may be transferred to the pipeline engagement activity coordination expenses fund. Interest earned on money in the fund established under this section shall be credited to the fund. The fund is continuously appropriated to the Department of Public Safety, which shall administer the fund. All money received by the department for the fund shall be set forth in an informational

budget pursuant to § 4-7-7.2 and be annually reviewed by the Legislature.

The secretary shall approve vouchers and the state auditor shall draw warrants to pay any claim authorized by this Act.

Any civil recoveries shall be deposited in the fund.

Section 6. Whereas, this Act is necessary for the support of the state government and its existing public institutions, an emergency is hereby declared to exist, and this Act shall be in full force and effect from and after its passage and approval.

South Dakota Codified Law 22-10-6 provides:

Any person who participates in any riot and who directs, advises, encourages, or solicits other persons participating in the riot to acts of force or violence is guilty of a Class 2 felony.

South Dakota Codified Law 22-10-6.1 provides:

Any person who does not personally participate in any riot but who directs, advises, encourages, or solicits other persons participating in the riot to acts of force or violence is guilty of a Class 5 felony.

**A. The South Dakota Criminal Riot Statutes**

### i. **Historical interpretations of the criminal riot statutes**

Although not one of the challenged laws, SDCL § 22-10-1, the crime of riot, is starting point for analyzing the challenged laws and the Act.  It is the foundation of the riot chapter codified in 1939 and for the Act.  The challenged laws and the Act must be construed with the well-settled interpretation of the crime of riot.  "The riot statutes have been part of our penal code since 1877." *State v. Bad Heart Bull*, 257 N.W.2d 715, 720–21 (S.D. 1977) (citing South Dakota Penal Code 1877, ss 476 and 477).  Interpretations of statutes regulating the crime of riot date from as early as 1902.  *See State v. Page*, 91 N.W. 313 (S.D. 1902); *State v. Comes*, 268 N.W. 724 (S.D. 1936) (citing Section 3934, Rev. Code 1919).  Courts continued to construe and apply the riot

statute and several of the current statutes defining and regulating riot in South

Dakota. *See State v. Bad Heart Bull*, 257 N.W. 2d 715 (S.D. 1977) (interpreting

SDCL §§ 22-10-1 and 22-10-3); *State v. Robideau*, 262 N.W.2d 52 (S.D. 1978)

(interpreting SDCL §§ 22-10-1 and 22-10-5); *State v. Kane*, 266 N.W.2d 552

(S.D. 1978) (interpreting SDCL §§ 22-10-1 and 22-10-4) (overruled by *State v.*

*Smith*, 353 N.W.2d 338 (S.D. 1984), on other grounds); *State v. Means*, 268

N.W. 2d 802 (S.D. 1978) (interpreting SDCL §§ 22-10-1 and 22-10-4). These

cases set the framework for the South Dakota Supreme Court's interpretation

of the challenged laws and the Act.

The definition of riot, in its present form, states: "Any use of force or

violence or any threat to use force or violence, if accompanied by immediate

power of execution, by three or more persons, acting together and without

authority of law, is riot. Riot is a Class 4 felony." The South Dakota Supreme

Court determined the constitutionality of SDCL § 22-10-1 in *State v. Bad Heart*

*Bull*. Defendant Bad Heart Bull challenged the riot statute primarily on First

Amendment grounds arguing, similar to Plaintiffs' argument in the case at bar,

that it infringes free speech and the right to assembly and violates due process

for a lack of criminal intent element. *State v. Bad Heart Bull*, 257 N.W.2d 715

(S.D. 1977). The Court disagreed with these arguments and unequivocally

held, first as to the statute's constitutionality, that:

> [T]he gravamen of the crime of riot in South Dakota is violence or
> the immediate threat thereof. As such, it relates to and prohibits
> certain defined conduct rather than forms of expression. Laws of
> this nature are needed and necessary to preserve good order and
> to protect all persons and all property from the violence of a few.

They do not violate the constitutional rights of free expression and assembly as those rights end when violence begins.

*Id.* at 722.

In addition to finding SDCL § 22-10-1 constitutional, the argument that the statute lacked an intent element failed. The court in *Bad Heart Bull* found criminal intent within the commission of riot. *State v. Means*, 268 N.W.2d 802, 808 (S.D. 1978) (summarizing the holding of *Bad Heart Bull* which held "where criminal intent is an essential element of the crime, but is not made so by express statutory language, it will be implied."). To be guilty of riot, there must be proof of "common or mutual intent of the group to commit an unlawful act by force or violence or the threat thereof." *Bad Heart Bull*, 257 N.W.2d 715, 719 ("every person who participates in a riot acts at his own peril and may be held criminally responsible for the natural and probable consequences of the riot action. . . .").

Just a year later, the Court again considered the validity of SDCL § 22-10-1[2] for whether it required the necessary intent and whether it was constitutional in light of the First Amendment. As in *Bad Heart Bull*, the Court affirmed the riot statute as constitutional in *State v. Means.* Importantly, the Court instructed that the crime of riot required a finding of necessary criminal intent. The *Means* court reaffirmed its holding in *Bad Heart Bull* by

---

[2] The court also considered SDCL § 22-10-4, riot to obstruct crime is repealed. SDCL §§ 22-10-2 to 22-10-4 were repealed in 1976. *See* SL 1976, ch 158, § 10-8. Those statutes addressed the refusal to aid or obey an arresting officer, the guilt of participants in riot of a felony committed in course of riot, riot to obstruct justice, and punishment. *Id.*

summarizing that "The necessary criminal intent to commit the crime of riot may be inferred from all the facts and circumstances surrounding the commission of the offense. And that where criminal intent is an essential element of the crime, but is not made so by express statutory language, it will be implied." *Means*, 268 N.W.2d at 808. The *Means* court further reaffirmed its finding of constitutionality of the riot statute in *Bad Heart Bull* and stated:

> 2. The riot statutes give fair notice to a person of ordinary intelligence that certain specific conduct is prohibited, and are therefore not constitutionally infirm by reason of vagueness or overbreadth.

> 3. That the riot statutes prohibit certain defined conduct, rather than forms of expression, and therefore they do not violate the constitutional rights of free expression and assembly, as those rights end when violence begins.

*Means*, 268 N.W.2d at 808.

Because SDCL § 22-10-1 is the definitional and foundational basis for the challenged laws and the Act, it follows that the challenged laws and the Act should be analyzed under the same interpretations the Court has pronounced in previous cases pertaining to the crime of riot.

### ii. Statutory interpretation of SDCL § 22-10-6

SDCL § 22-10-1 has been upheld as constitutional by the South Dakota Supreme Court and is not being challenged by the Plaintiffs in the present action. *State v. Bad Heart Bull*, 257 N.W.2d 715, 722 (S.D. 1977); *State v. Means*, 268 N.W. 2d 802, 808 (S.D. 1978). Having twice confirmed that riot under SDCL § 22-10-1 is constitutionally sound, the Court would likely find SDCL § 22-10-6 constitutional as well.

SDCL § 22-10-6 was enacted by the South Dakota Legislature in 1939. *See* SDC 1939, §13.1402. "The starting point when interpreting a statute must always be the language itself." *State v. Livingood*, 2018 S.D. 83, ¶ 31, 921 N.W.2d 492, 499 (citing *Puetz Corp. v. S.D. Dep't of Revenue*, 2015 S.D. 82, ¶ 16, 871 N.W.2d 632, 637). The statutory language provides precise descriptions of both the actors and the conduct regulated under its authority. Regarding the actors this statute constrains, the language requires that an active participant ("any person who participates in any riot") then also must direct, advise, encourage, or solicit another active participant ("other persons participating in the riot") in a riot to acts of force or violence in order for criminal liability to be imposed.

Regarding whether the crime prohibited in this section requires an element of intent, the South Dakota Supreme Court inferred the element of intent in the crime of riot. *State v. Means*, 268 N.W.2d 802, 808 (S.D. 1978) (summarizing the holding of *Bad Heart Bull* which held "where criminal intent is an essential element of the crime, but is not made so by express statutory language, it will be implied."). By requiring proof of intent in the underlying crime of riot, which is the basic foundational definition of the subject laws, necessarily there is an element of intent within SDCL § 22-10-6 as well. Plaintiffs contend that there is no element requiring imminence of the intended violence. *See* Plaintiffs' Memorandum in Support of Their Motion for a Preliminary Injunction at 13. To the contrary, the legislature's use of "participating in a riot" in the present tense, indicates that a riot must be

10

ongoing at the time the direction, advice, encouragement, or solicitation is dispensed. *State v. Livingood*, 2018 S.D. 83, ¶ 31, 921 N.W.2d 492, 499 ("The clearest indicator of legislative intent is a statute's plain language"). Nothing is more imminent than something actually occurring. As to the description of regulated conduct, the terms "directs, advises, encourages, or solicits" are not specifically defined but must be construed in conjunction with each other. *See Spiska Eng'g, Inc. v. SPM Thermo-Shield, Inc.*, 2004 S.D. 44, ¶ 6, 678 N.W.2d 804, 806 (stating "the maxim [*noscitur a sociis*] means 'it is known from its associates' and in practical application means that a word may be defined by an accompanying word, and ordinarily the coupling of words denotes an intention that they should be understood in the same general sense."); *Opperman v. Heritage Mut. Ins. Co.*, 1997 S.D. 85, ¶ 7, 566 N.W.2d 487, 490–91 (stating that "[u]nder the canon of *noscitur a sociis,* words take import from each other. This maxim of interpretation is 'wisely applied where a word [or phrase] is capable of many meanings in order to avoid the giving of unintended breadth'. . . .") (internal citations omitted).

Also, when terms are not statutorily defined the court looks at the commonly understood meaning. *Livingood*, 2018 S.D. 83, ¶ 31, 921 N.W.2d at 499. The four verbs are terms of incitement. Black's Law Dictionary defines "direct" as "to cause something or someone to move on a particular course" and "to guide something or someone; to govern" and "to instruct someone with authority." Direct, Black's Law Dictionary (10th ed. 2014). "Advice" and its verb "advise*"* commonly mean guidance offered by one person to another.

Advice, Black's Law Dictionary (10th ed. 2014). Merriam-Webster also defines "advise" as "to give (someone) a recommendation about what should be done; to give advice to." *Merriam-Webster Online Dictionary* (accessed April 26, 2019). "Encourage" is "to instigate; to incite to action; to embolden; to help." Encourage, Black's Law Dictionary (10th ed. 2014). In its general sense, "solicitation," and the verb "solicit," means to "act or an instance of requesting or seeking to obtain something; a request or petition." Solicitation, Black's Law Dictionary (10th ed. 2014). "Solicit" is also defined as "to entice or lure especially into evil." *Merriam-Webster Online Dictionary* (accessed April 26, 2019). These definitions encompass action with their inclusion of phrases such as "to cause someone to . . . move," "to instruct someone with authority," "to give advice," "to incite to action," "to embolden," and "to entice or lure . . . into evil." Each term construed together in the same general sense goes beyond mere suggestion or sharing of ideas, which Plaintiffs contend, Plaintiffs' Memorandum in Support of of Their Motion for a Preliminary Injunction at 21, but provides concrete direction as to the conduct undertaken—in this case, directing, advising, encouraging, or soliciting others who are participating in an <u>ongoing riot</u> to committing acts of force or violence.

Plaintiffs allege that there is no causation element expressed within this law. Causation is a requirement when one considers the definitions of the chain of verbs with all other parts of the statute as a whole. *See Olson v. Butte Cty. Comm'n*, 2019 S.D. 13, ¶ 5 (quoting *Dale v. Young*, 2015 S.D. 96, ¶ 6, 873 N.W.2d 72, 74 (additional citations omitted) (stating the well-settled rule of law

that the intent of a statute "must be determined from the statute as a whole, as well as enactments relating to the same subject)). As a whole, the terms "directs, advises, encourages, or solicits" must be construed as *causing* another "to use force or violence in furtherance of the crime of riot." The terms "directs, advises, encourages, or solicits" cannot be divorced from the acts of force or violence caused by and perpetrated by all individuals being physically engaged in an active riot. The language of the statute conveys to the public that each participant in the conduct regulated under this statute must already be engaged in a riot as defined in SDCL § 22-10-1 to be found guilty. Calls for force or violence by those actively participating in a riot—and already committing acts of force or violence—is not constitutionally protected speech. Of paramount importance neither the use of force or violence, nor the incitement thereof, are extended the protections of the First Amendment. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *State v. Bad Heart Bull*, 257 N.W. 2d 715, 722 (S.D. 1977); *State v. Means*, 268 N.W. 2d 802, 808 (S.D. 1978).

An active riot participant who incites another active riot participant to the use of force or violence—to essentially engage in a riot or additional riotous conduct—is guilty of a class 2 felony. The gravamen of this crime, SDCL § 22-10-6, is to prohibit the defined conduct of inciting another during a riot to commit acts of force of violence. As such, this law does not prohibit any form of protected speech or expression and does not violate any constitutional right implicated by the First Amendment.

### iii.  Statutory interpretation of SDCL § 22-10-6.1

The language of SDCL § 22-10-6.1 is substantially similar to SDCL § 22-10-6, with the key difference that a person inciting, or "directs, advises, encourages, or solicits," a riot participant to the use of force or violence does not have be personally participating in the riot as a requirement of the crime. Regardless of that difference, SDCL § 22-10-6.1 includes the consistent requirement that a current and ongoing riot must be taking place.  By definition, the "threat to use force or violence, if accompanied by the immediate power of execution" is present.  The words of incitement—because they create the threat to use force or violence-- are therefore necessarily and intrinsically tied to that very immediate power of execution.  Ultimately, the language of the statute is not open to ambiguity.  All terms used within it are clear and convey to the public who and what is regulated.  *See supra* I.A.ii.

The historical overview of riot under SDCL § 22-10-1 and the interpretative analysis of the challenged laws shows that the language detailing what constitutes riot in South Dakota, and further what constitutes the incitement of said riot, have been set out in a similar and consistent manner since the inception of riot as a crime as early as 1877.  Under the canons of construction established by the South Dakota Supreme Court and principles of First Amendment law declining to extend protection to conduct or speech that incites violence, the challenged laws are a valid exercise of the regulation of criminal conduct.

**B. The Act**

Plaintiffs challenge the entire Act but their argument primarily concerns two sections: Sections 2 and 4. To be complete, State Defendants will discuss each section in turn. –

**i. Section 1**

Section 1 of this Act does not present any question of interpretation, its purpose being to provide definitions and clarify certain terms used within the rest of the Act. Tellingly, subsection 4 is a civil codification of the criminal offense of riot as defined in SDCL § 22-10-1, which, as previously noted, is not challenged by the Plaintiffs. The incorporation of language previously upheld by the South Dakota Supreme Court emphasizes that the Act, placed within the chapter of the South Dakota code reserved for civil tort liability, aligns appropriately with the criminal riot statutes.

**ii. Section 2**

This section establishes the civil tort of riot boosting and creates joint and several liability therefore, and in three separate subsections, details the actors and conduct that are subject to the regulation.

**a. Subsection 1**

Section 2(1) is essentially a civil codification of SDCL § 22-10-6. *See supra* I.A.ii. There are no terms or phrases within the language that are open to ambiguity. "When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *In re*

15

*Wintersteen Revocable Trust Agreement*, 2018 S.D. 12, ¶ 12, 907 N.W.2d 785, 789 (citations omitted).  The plain language, on its face, sets forth that an active participant in a riot who incites ("directs, advises, encourages, or solicits") another active participant in a riot to acts of force or violence is liable for riot boosting.

### b. Subsection 2

Section 2(2) is a civil codification of SDCL § 22-10-6.1.  *See supra* I.A.iii. No terms or phrases within this subsection, as with subsection 1, are ambiguous or open to interpretation.  The plain, ordinary meaning of the provision details that a person who does not personally participate in a riot but who incites ("directs, advises, encourages, or solicits") an active participant in an ongoing riot to acts of force or violence is liable for riot boosting.

### c. Subsection 3

This section aligns as a codification of SDCL § 22-10-1 so the person participating in the riot who was incited to do so is also held liable if they engage in the use of force or violence, or makes a threat to use force or violence, if accompanied by the immediate power of execution.  *See supra* I.A.

The unambiguous language of the statute, on its face, conveys that a person liable for riot under SDCL § 22-10-1, which is a person who "uses force or violence, or makes any threat to use force or violence, if accompanied by immediate power of execution, by three or more persons, acting together and without authority of law," is also liable for riot boosting if the person was participating in a riot but then committed additional force or violence at the

incitement of another person. No protected speech is at issue under this section, which functions to hold liable rioters who, *while actively engaging in riotous conduct*, undertake force or violence or any threat to use force or violence, if accompanied by immediate power of execution at the direction of another.

### iii. Section 3

This section establishes the jurisdiction of South Dakota courts over riot boosting within the state and the admissibility of certain evidence in such proceedings. The plain language of section 3 further denotes that only the state or a political subdivision may be a plaintiff in an action for riot boosting, and only these entities may file suit against an individual or individuals alleged to be civilly liable for riot boosting. The words and phrases of this section are clear, certain, and unambiguous, and can be construed by the court as clearly expressed.

### iv. Section 4

Section 4 strictly conveys to the public what constitutes recoverable damages in an action for riot boosting. Because the reference to "the plaintiff" within the first sentence plainly references the plaintiff in an action for riot boosting, it follows that "a defendant" referenced in the second sentence must be a defendant in an action for riot boosting—or a person alleged to have committed conduct specified in Section 2 of the Act—and may be subject to recovery of civil damages. *See In re Taliaferro*, 2014 S.D. 82, ¶ 6, 856 N.W.2d 805, 806-07 (Intent "'must be determined from the statute as a whole. . . .'").

17

Only section 2 establishes the cause of action. There is no separate cause of action established by section 4. Section 4's function is to detail liability for damages under the Act for the conduct specified in Section 2.

Contrary to Plaintiffs' illogical assertion, no *person* is subject to treble damages under the second sentence unless that person has first committed the tort of riot boosting and is then "a defendant" in the tort action. The interpretation urged by Plaintiffs is contrary to the plain language of the statute. *See Argus Leader Media v. Hogstad*, 2017 S.D. 57, ¶ 9, 902 N.W.2d 778, 782) (quoting *Hayes v. Rosenbaum Signs & Outdoor Advert., Inc.*, 2014 S.D. 64, ¶ 28, 853 N.W.2d 878, 885) (applying the well-settled standard that when the court construes statutes, it "presumes that the legislature did not intend an absurd or unreasonable result.").

### v. Section 5

This section sets up the riot boosting recovery fund within the state treasury and specifies the use of any monies deposited within the fund. The words and phrases of this section are clear, certain, and unambiguous, and can be construed by the court as clearly expressed.

### vi. Section 6

Section 6 declares the immediate effectiveness of the Act upon its passage and approval. No language in this section requires interpretation.

In conclusion, the Act contains no ambiguous or unclear language.

The language used gives adequate notice and information to members of

the public regarding what conduct is regulated by the Act, and which persons are subject to the penalties and liability established by the Act.

## II.    Based on the language of the statutes, State Defendants have shown that they are entitled to judgment on the pleadings and that Plaintiffs' motion for a preliminary injunction should be denied.

"When reviewing a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the court applies the same standard as that on a motion to dismiss under Rule 12(b)(6)." *Shaw v. Kaemingk*, No. 4:17-CV-04116-KES, 2019 WL 1388630, at *2 (D.S.D. Mar. 27, 2019) (citing *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (noting that courts review a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion).  "Judgment on the pleadings is appropriate when there are no material facts to resolve and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 497-98 (8th Cir. 2010)) (additional citations omitted).  "The facts pleaded by the non-moving party must be accepted as true and all reasonable inferences from the pleadings should be taken in favor of the non-moving party." *Id.*  "The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Id.* (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).  As a matter of law, in applying the applicable legal standards and tests, State Defendants are entitled to judgment on the pleadings.

Additionally, "[a] preliminary injunction is an 'extraordinary and drastic remedy.'" *Hughbanks v. Dooley*, 788 F. Supp. 2d 988, 992 (D.S.D. 2011)

(quoting *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).  "The burden of proving that a preliminary injunction should be issued rests entirely with the movant." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).  Four factors must be weighed when considering a motion for preliminary injunction: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Hughbanks*, 788 F. Supp. 2d at 992 (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "[W]here a preliminary injunction is sought to enjoin the implementation of a duly enacted state statute," district courts must "make a threshold finding that a party is likely to prevail on the merits[.]" *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008).  An examination of this threshold factor affirms that Plaintiffs' Motion for Preliminary Injunction must be denied.

In addition to the standards of review regarding judgment on the pleadings and preliminary injunctions, two overarching principles to consider throughout the brief are the standards regarding facial and as-applied challenges to statutory enactments.  Plaintiffs have challenged the Act and challenged laws on both on facial grounds and as applied to the Plaintiffs.

"Facial challenges are disfavored" because they "often rest on speculation.... [and] raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'"  *Phelps-Roper v. City of Manchester,*

*Mo.*, 697 F.3d 678, 685 (8th Cir. 2012) (quoting *Wash. State Grange v. Wash. State Republican Party et al.,* 552 U.S. 442, 450, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)). "To succeed, challengers would have to establish 'that no set of circumstances exists under which [the ordinance] would be valid,'" *Id.* (quoting *United States v. Stevens,* 559U.S. 460, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010)) "or that the statute lacks any 'plainly legitimate sweep.'" *Id.* A statute "may also be invalidated on a facial First Amendment challenge as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to [its] plainly legitimate sweep.'" *Id.* "First Amendment issues require a 'case-by-case analysis of the fact[s][.]'" *Id.* (quoting *Broadrick et al. v. Okla. et al.,* 413 U.S. 601, 615–16, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)).

Regarding as-applied challenges, the United State Supreme Court has stated:

> A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications. So classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding "breadth of the remedy," but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation.

*Bucklew v. Precythe*, 139 S. Ct. 1112, 1127–28 (2019) (citing *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010)). In *Bucklew*, the Court determined that a party asserting an as-applied challenge must meet the same standard or substantive rule of law that would apply to a facial challenge. *Id.* at 1128 (citing *Gross v. United States*, 771 F.3d

10, 14–15 (CADC 2014); *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 228 (CA2 2006)).

**A.  Legal questions pertinent to this matter fall in favor of State Defendants, and Plaintiffs are not likely to succeed on the merits of their claims.**

As the threshold determination, the most significant factor to weigh in the present case is whether the Plaintiffs are likely to succeed on the merits of the claims presented in the Complaint.  Plaintiffs essentially assert four claims: the Act and challenged laws abridge speech protected under the First Amendment, are overbroad, are vague, and violate the Plaintiffs' right to association protected under the First Amendment.  For the reasons set out below, each of these claims is likely to fail as a matter of law.

**i. The challenged laws do not proscribe protected speech.**

The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech[.]"  U.S. Const. amend. I.  "While this provision is not a restraint upon the powers of the states, the states are precluded from abridging the freedom of speech . . . by force of the due process clause of the Fourteenth Amendment."  *Grosjean v. Am. Press Co.*, 297 U.S. 233, 243 (1936).  Not all speech, however, is granted First Amendment protection.

A long-established exception to the First Amendment is that speech which incites violence or unlawful acts is not shielded under the First Amendment.  *Brandenburg v. Ohio*, 395 U.S. 444 (1969).  "The constitutional guarantees of free speech and free press do not permit a State to forbid or

proscribe advocacy of the use of force or of law violations *except where such advocacy is directed to inciting or producing imminent lawless action and is likely to invite or produce such action.*" *Id.* at 447 (1969) (emphasis added). "The *Brandenburg* test precludes speech from being sanctioned as incitement to riot unless (1) the speech explicitly or implicitly encouraged the use of violence or lawless action, (2) the speaker intends that his speech will result in the use of violence or lawless action, and (3) the imminent use of violence or lawless action is the likely result of his speech." *Nwanguma v. Trump*, 903 F.3d 604, 609 (6th Cir. 2018) (quoting *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 246 (6th Cir. 2015) (en banc) (footnote omitted)).

In analyzing the first factor of the *Brandenburg* test, "[w]hat is required, to forfeit constitutional protection, is incitement speech that 'specifically advocate[s]' for listeners to take unlawful action." *Id.* at 610 (6th Cir. 2018) (quoting *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 245 (6th Cir. 2015) (citing *Hess v. Indiana*, 414 U.S. 105, 109, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973))). "The *Hess* Court focused on the words, on the language, that comprised the subject speech, i.e., the first *Brandenburg* factor." *Id.* at 611 (6th Cir. 2018).

In the absence of language uttered by an actual defendant in a relevant action under the Act or riot statutes, other than the numerous hypotheticals presented by the Plaintiffs, a precise analysis of this section is potentially premature. However, turning again to the language of the statute is instructive. *See supra* I.A. For example, Section 2 of the Act specifically

regulates only speech which incites force or violence. It bears repeating that "any use of force or violence or the threat to use force or violence", under SDCL § 22-10-1, when undertaken by three or more people, accompanied by the immediate power of execution, acting together and without the authority of law, is a riot. As a result, Section 2 of the Act creates civil liability specifically for riotous conduct already criminalized within the South Dakota Codified Laws. Specific advocacy can be found in the inclusion of the Act and related statutes of the element that a person *direct, advise, encourage, or solicit* other persons participating in the riot to acts of force or violence. That string of operative verbs within the various sections of the Act and within the challenged riot statutes, when read as a whole, requires a level of advocacy above mere suggestion or strategizing.

In accordance with the first prong of the *Brandenburg* test, the language of the Act and challenged laws further requires the speech be made to a specific person or group of persons ("other persons participating in the riot"), which is also a form of "specific advocacy." *See Hess v. Indiana*, 414 U.S. 105, 108–09, 94 S.Ct. 326, 329, 38 L.Ed.2d 303 (1973) ("Since the uncontroverted evidence showed that Hess' statement was not directed to any person or group of persons, it cannot be said that he was advocating, in the normal sense, any action.")

The second prong of *Brandenburg* requires that "the speaker intends that his [or her] speech will result in the use of violence or lawless action." *Nwanguma v. Trump*, 903 F.3d 604, 609 (6th Cir. 2018) (additional citations

omitted).  The intent requirement under this prong is also inferred by the type

of speech referenced in the challenged laws, that being speech that "directs,

advises, encourages, or solicits."  These verbs are defined as producing speech

that regulates conduct, recommends what should be done, and lures or entices

to negative action.  *See supra* I.A.ii.  The level of direction thus attached to this

speech shows that a speaker must intend to direct, influence, or control the

conduct of those to whom he or she is speaking.  Additionally, the direction

must not regard merely any action, but specifically direct force or violence in

order for criminal or civil liability to be imposed under the Act or challenged

laws.  The South Dakota Supreme Court has provided that intent is an element

of riot as defined by SDCL § 22-10-1.  In *State v. Bad Heart Bull*, 257 N.W. 2d

at 719-720, the Court wrote:

> Mere presence alone does not make one a rioter but any person
> who encourages, incites, promotes, or actively engages in a riot is
> guilty as a principal.  It necessarily is a group crime requiring proof
> of a common or mutual criminal intent.

(citations omitted).  The second prong of the *Brandenburg* test is therefore

fulfilled.

Finally, the last prong of the *Brandenburg* test requires that "the

imminent use of violence or lawless action is the likely result of his [or her]

speech[.]"  *Nwanguma v. Trump*, 903 F.3d 604, 609 (6th Cir. 2018) (additional

citations omitted).  Within the scope of the Act and challenged laws, this

requirement is met by the condition that the regulated speech be directed, in

each case, at a person "participating in the riot."  The prerequisite of an

ongoing riot meets the imminence component because it requires that the direction occur within an environment in which the riot participant is readily able to effectuate the direction provided by the person directing the participant and in which other violent conduct is already happening. This requirement of proximity in time to an ongoing riot precludes several of the hypotheticals presented by the Plaintiffs that speculate about speech made to individuals. These hypotheticals include plans to protest made days, weeks, or months removed from the occurrence of the planned protest. Speech regarding a protest is not what is contemplated by the Act or challenged laws and not found in the language that is clearly in the laws. As the South Dakota Supreme Court reasoned in *State v. Bad Heart Bull*, "the gravamen of the crime of riot in South Dakota is *violence or the immediate threa*t thereof. As such, *it relates to and prohibits certain defined conduct*[.]" 257 N.W.2d 715, 722 (S.D. 1977) (emphasis added).

The prerequisite within Sections 2(1) and 2(2) of the Act that the person at whom the speech is directed be a participant in an ongoing riot also fulfills the requirement that violence or lawless action be the likely result of the speech. It is a logical conclusion that a person directed to engage in force or violence, when that person has already chosen to undertake participation in a riot, is much more likely to fulfill the direction because the tools to fulfill the directive are immediately available. This ability to engage in the conduct and effectuate the direction does not need to merely exist at some point in the future—the Act requires that a riot must be presently occurring, as do SDCL §§

26

22-10-6 and 22-10-6.1.  This also precludes Plaintiffs' presented hypothetical that speech would be implicated if made to individuals prior to a protest that turned into a riot. Under the language of the challenged laws, the pertinent conduct—that directing, advising, encouraging, or soliciting the use of force or violence— must be made during the occurrence of and to a participant in an ongoing riot.

The requirement in *National Association for the Advancement of Colored People v. Claiborne Hardware,* 453 U.S. 886 (1982), cited by the Plaintiffs that speech must necessarily be followed by unlawful activity, *see* Plaintiffs' Memorandum In Support of Their Motion for a Preliminary Injunction at 15, or that "unlawful activity must also actually occur as a result of the speech," is already incorporated into the statutory scheme of the Act and the challenged laws.  The language specifically includes that a person is liable if already engaged in a riot—which is defined to include force or violence and must be found to have occurred in order for civil liability to be imposed—and was directed by a riot booster to commit forceful or violent act.  The language "force or violence" comes *directly from the criminal statutes.*  This repetition serves to clarify the requirement that certain acts required in an *unlawful riot*, not merely a protest, must have been the result of direction in order for liability to be imposed under the Act.

As the prior analysis indicates, the Act and challenged laws fulfill all factors of the *Brandenburg* test and do not proscribe protected speech.  The First Amendment is therefore not implicated, and the State Defendants thus

need not address whether the subject laws are narrowly tailored to a compelling state interest. The absence of First Amendment protections to the Act and challenged laws precludes Plaintiffs' argument that the Act and challenged laws are content-based. "Governmental action that regulates speech on the basis of its subject matter "'slip[s] from the neutrality of time, place, and circumstance into a concern about content.'" *Consol. Edison Co. of New York v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 536, 100 S. Ct. 2326, 2332, 65 L. Ed. 2d 319 (1980) (quoting *Police Department of Chicago v. Mosley*, 408 U.S. 92, 99, 92 S.Ct. 2286, 2292, 33 L.Ed.2d 212 (1972)) (additional citations omitted). The Act and challenged laws are content-neutral because they do not attempt to regulate the speech of any parties on the basis of its content. No specific viewpoints are separated out or treated in a manner that would distinguish them from any other. *See Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678, 688-689 (8th Cir. 2012) (ordinance regulating when and where protest activities could occur in relation to a funeral was content neutral because it did not reference the content of protestors' speech, therefore "[a] person may be regulated under the ordinance for disrupting a funeral or burial service with speech concerning any topic or viewpoint.")

Plaintiffs also assert throughout their brief that previous pipeline protests were the catalyst for the Act and that this somehow turns the Act into a content-based law or law targeting only pipeline protests. However, the Act and challenged laws apply to all riot boosting and unlawful riots. "The 'plain meaning of the text controls, and the legislature's specific motivation for

passing a law is not relevant so long as the provision is neutral on its face.'" *Id.* at 688 (citing *Phelps-Roper v. Nixon*, 545 F.3d 685, 691 (8th Cir. 2008), overruled on other grounds by *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012)).

The only speech regulated under the Act and challenged laws is incitement to force or violence that must occur in such immediate proximity to force or violence that they are essentially related.

### ii. The challenged laws do not violate Plaintiffs' First Amendment Right of Association.

As indicated in the application of the *Brandenburg* test, the challenged laws do not proscribe protected speech or expression. As a result, the regulation of unprotected speech does not implicate the First Amendment or any rights thereunder.

### iii. The challenged laws are not overbroad.

"According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of *protected speech*. The doctrine seeks to strike a balance bet      ween competing social costs." *United States v. Williams*, 553 U.S. 285, 292–93, 128 S.Ct. 1830, 1838, 170 L.Ed.2d 650 (2008) (quoting *Virginia v. Hicks,* 539 U.S. 113, 119–120, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (emphasis added)). "In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be *substantial,* not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.*; *see also Board of*

*Trustees of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 485, 109 S.Ct. 3028, 106

L.Ed.2d 388 1989); *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908,

37 L.Ed.2d 830 (1973).  "Invalidation for overbreadth is 'strong medicine' that

is not to be 'casually employed.'"  *Id.* (quoting *Los Angeles Police Dept. v. United*

*Reporting Publishing Corp.,* 528 U.S. 32, 39, 120 S.Ct. 483, 145 L.Ed.2d 451

(1999)) (additional citations omitted).

"The first step in overbreadth analysis is to construe the challenged

statute; it is impossible to determine whether a statute reaches too far without

first knowing what the statute covers."  *United States v. Williams*, 553 U.S. 285,

292–93, 128 S.Ct. 1830, 1838, 170 L.Ed.2d 650 (2008).

As concluded above, by both construing the challenged laws and

applying the *Brandenburg* test, there is no protected speech present in the

circumstances contemplated by the regulations at issue.  Thus, the Act and

challenged laws are not overbroad.

### iv.     The challenged laws are not void for vagueness.

"Challenges to statutes on the basis of vagueness implicate the Fifth and

Fourteenth Amendments guarantee of the right to due process."  *United States*

*v. Demars*, No. 5:15-MJ-00130-DW, 2016 WL 4148249, at *2 (D.S.D. Aug. 3,

2016) (citing *United States v. Washam*, 312 F.3d 926, 929 (8th Cir. 2002))

(additional citations omitted).  "It is a basic principle of due process that an

enactment is void for vagueness if its prohibitions are not clearly defined."  *Id.*

(quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)).  A criminal

statute may be found void for vagueness if it fails to "define the criminal offense

with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* (quoting *State v. Myers*, 2014 SD 88, ¶ 6, 857 N.W.2d 597, 599, quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). Further, "[a] statute will be held unconstitutionally vague if the 'forbidden conduct is so poorly defined that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id.* (quoting *Planned Parenthood Minnesota, North Dakota, South Dakota v. Daugaard*, 799 F.Supp.2d 1048, 1067 (D.S.D. 2011)).

In this instance, neither the Act or the challenged criminal statutes can be determined as vague. Plaintiffs argue that the terms direct, advise, encourage, and solicit are vague because they are defined in terms of the effect they have on listeners. This is incorrect. Those terms are, in the simplest grammatical sense and as set forth in the Act and criminal riot statutes, verbs that have specific meanings—they are actions, not effects on third parties. As these terms define conduct that incites force or violence—in other words, the crime of riot under SDCL § 22-10-1—the statute prohibits      conduct that does not fall under the protections of the First Amendment. When given their ordinary and popular meanings, all the terms within the statutes work in harmony to provide clear and accurate descriptions of the conduct and persons subject to the regulations. *See supra* I.A.

Additionally, the regulations do not encourage arbitrary or discriminatory enforcement. The language prohibits all riots and riot boosting regardless of the instigating factors that caused a riot or the conduct of its participants.

As emphasized throughout, the Act and challenged laws only proscribed unprotected speech. As a result, the argument that the statute is vague must fail because protected speech is not regulated within the context of the Act or challenged laws.

Based on the foregoing arguments, the Plaintiffs are not likely to succeed based on the merits of the claims asserted in the Complaint. As a matter of law, State Defendants have shown that Plaintiffs' legal arguments are meritless and that judgment on the pleadings should be granted to the State Defendants. Additionally, as Plaintiffs' arguments do not indicate a likelihood of success, the first prong of the *Dataphase* test is not met and a preliminary injunction should be denied. An evaluation of the remaining *Dataphase* factors reinforces this conclusion.

**B.    No threat of irreparable harm to Plaintiffs.**

Regarding a showing of the threat of irreparable harm, in order to receive a preliminary injunction, a party must establish that it has "no adequate remedy at law" because "its injuries [cannot] be fully compensated through an award of damages." *Mgmt. Registry, Inc. v. A.W. Companies, Inc.*, No. 17-3675, 2019 WL 1560749, at *2 (8th Cir. Apr. 11, 2019) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)).

While the loss of First Amendment freedoms is sufficient to show irreparable harm, *Inst. for Free Speech v. Jackley*, 340 F. Supp. 3d 853, 861 (D.S.D. 2018) (citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2376, 49 L.Ed.2d 547 (1976)), no First Amendment freedoms are restricted under the Act and challenged laws because the language of the subject laws do not encroach on protected speech. Thus, no irreparable harm has been shown in the present case and the motion for a preliminary injunction should be denied. "Failure to show irreparable harm alone is a sufficient basis for a court to deny injunctive relief." *Hunter v. Sioux City Police Dep't*, No. CIV 18-04119, 2018 WL 4853912, at *7 (D.S.D. Oct. 5, 2018) (citing *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987)). Moreover, the ability to preliminarily enjoin the Governor and Attorney General is even more tentative at this point because Plaintiffs have not shown that either the Attorney General or the Governor have moved to take any action against Plaintiffs. *Reproductive Health Services of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*, 428 F.3d. 1139, 1145 (8th Cir. 2005).

### C. Balance between threat of harm to Plaintiffs and the injury that granting the injunction will inflict on the State.

In addressing this factor, "the court must assess the balance between the alleged irreparable harm and the harm an injunction would inflict on other parties." *Eliason v. City of Rapid City*, 306 F. Supp. 3d 1131, 1146 (D.S.D. 2018) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)).

The balance, in this case, weighs against the alleged irreparable harm. Irreparable harm is not a risk because the right Plaintiffs repeatedly assert they intend to undertake is the right to protest. This right is not abridged by the language of the Act or challenged laws, which regulate the crime of riot or unprotected speech that incites violence or force. Meanwhile, should an injunction be granted, damage to public property or injury to persons occurring during commission of a riot, through the incitement of force or violence, is possible and the State would lack recourse under the Act or challenged laws against those who undertook such conduct.

Injury to the public must also be considered. *First Premier Bank v. U.S. Consumer Fin. Prot. Bureau*, 819 F.Supp.2d 906, 922 (D.S.D. 2011) ("The balance of harms analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and on other interested parties, including the public.") The Act and challenged laws are legislative enactments put in place by the elected representatives of the people of South Dakota. Enjoining enforcement of the Act and challenged laws runs contra to the legislative process put in place by the South Dakota Constitution. Public policy is primarily determined by the constitution, statutes, common law, and judicial decisions of a state. *Twin City Pipe Line Co. v. Harding Glass Co.,* 283 U.S. 353, 357, 51 S.Ct. 476, 75 L.Ed. 1112 (1931).

**D.  The public interest favors denying Plaintiffs' motion.**

The determination of the likelihood of success on the merits of a First Amendment challenge will impact the determination of where the public

interest lies, because the public interest is served by protecting constitutional rights. *Eliason v. City of Rapid City*, 306 F. Supp. 3d 1131, 1146 (D.S.D. 2018) (citing *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled by Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012)).

The public interest in this case lies in favor of denying the preliminary injunction because nothing in the Act or the challenged laws abridges the First Amendment or prohibits the Plaintiffs' repeatedly expressed purpose of protesting. Acts and speech constituting a protest are permitted under the Act and challenged laws—what are not permitted are unlawful riot, acts of force or violence, or speech inciting riot or acts of force or violence. As has been repeatedly stated throughout this brief, the First Amendment does not extend its protections to that conduct or speech because protections end where violence begins—and the public interest is best served by protecting members of the public and public property from violent and unlawful conduct, as such conduct "is beyond the pale of constitutional protection." *N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 933, 102 S.Ct. 3409, 3436, 73 L.Ed.2d 1215 (1982).

## CONCLUSION

Plaintiffs unsuccessfully allege that the Act and challenged laws are unconstitutional. Plaintiffs' challenge fails because, as shown above, First Amendment protections are not implicated by any of the conduct regulated by the Act or challenged laws. Rather, State Defendants have shown that Plaintiffs are unlikely to succeed on the merits of their claims, as a matter of law. As a

result, State Defendants are entitled to judgment on the pleadings and Plaintiffs' Motion for a Preliminary Injunction should be denied.

Dated this 30th day of April, 2019.

/s/ *Richard M. Williams*
Richard M. Williams
Deputy Attorney General
Holly R. Farris
Assistant Attorney General
Mickelson Criminal Justice Center
1302 East Highway 14, Suite 1
Pierre, South Dakota 57501
Telephone: (605) 773-3215
rich.williams@state.sd.us
holly.farris@state.sd.us

Robert L. Morris
*Special Assistant Attorney General*
Morris Law Firm, Prof. LLC
704 7th Avenue, STE 202
P.O. Box 370
Belle Fourche, SD  57717-0370
(605) 723-7777
bobmorris@westriverlaw.com

*Attorneys for Governor Noem and Attorneys General Ravnsborg*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing memorandum complies with the limits in D.S.D. Civ. LR 7.1(B)(1). I further certify that, in preparation of this memorandum, Microsoft Word was used and applied specifically to include all text—including headings, footnotes, and quotations—except the caption, signature block, and this certification. I further certify that this document contains 9,448 words.

/s/ *Richard M. Williams*
Richard M. Williams
Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of April 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western Division by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Richard M. Williams*
Richard M. Williams
Deputy Attorney General