UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| DAKOTA RURAL ACTION; DALLAS GOLDTOOTH; INDIGENOUS ENVIRONMENTAL NETWORK; NDN COLLECTIVE; SIERRA CLUB; and NICHOLAS TILSEN; | * * * * * * | CIV 19-5026 |
| Plaintiffs, vs. | * * * | MEMORANDUM OPINION AND ORDER GRANTING KEVIN THOM'S MOTION TO DISMISS |
| KRISTI NOEM, in her official capacity as Governor of the State of South Dakota; JASON RAVNSBORG, in his official capacity as Attorney General; and KEVIN THOM, in his official capacity as Sheriff of Pennington County, | * * * * * * * | |
| Defendants. | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs allege that Senate Bill 189, 94th Session, South Dakota Legislature, 2019, "An act to establish a fund to receive civil recoveries to offset costs incurred by riot boosting, to make a continuous appropriation therefor, and to declare an emergency," and SDCL §§ 22-10-6 and 22-10-6.1 (challenged laws) are unconstitutional, both facially and as-applied. Plaintiffs allege that these laws infringe on their First Amendment rights. Plaintiffs further allege that the laws violate their rights to due process by failing to provide notice of what conduct constitutes a violation of the laws. The State Defendants deny Plaintiffs' allegations.

Defendant Kevin Thom, sued in his official capacity as Sheriff of Pennington County, filed a motion to dismiss in lieu of an Answer. (Doc. 23.) Sheriff Thom argues that he should be dismissed as a defendant pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim. In a nutshell, Sheriff

1

Thom argues that he is not a proper defendant because § 1983 does not encompass suits against the county simply because the sheriff is required to enforce state law.

## ANALYSIS

Standing to sue is a jurisdictional requirement "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, — U.S. —, 136 S.Ct. 1540, 1547 (2016); *see* U.S. Const. art. III, § 2. This is often referred to as Article III standing. *See Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 799 (8th Cir. 2006) (Article III standing to bring a First Amendment free speech challenge is "an inescapable threshold question"). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The burden corresponds with the degree of evidence required at the relevant stage of litigation. *Id.* "At the pleading stage general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* Plaintiffs must demonstrate standing as to each defendant. *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017). When determining whether to dismiss a complaint for lack of standing, a court is to "constru[e] the allegations of the complaint, and the reasonable inferences drawn therefrom, most favorably to the plaintiff." *Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876, 880 (8th Cir. 2015) (citations and quotation marks omitted).

The Supreme Court has stated that "the irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, (b) actual or imminent, not conjectural or hypothetical. *Id.* (citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . [t]he result [of] the independent action of some third party not before the court.'" *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43).

The Eighth Circuit has said that "[t]o establish injury in fact for a First Amendment challenge to a state statute, a plaintiff need not have been actually prosecuted or threatened with prosecution." *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) (citing *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 487 (8th Cir. 2006)). A plaintiff must only "establish that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute." *281 Care Comm.*, 638 F.3d at 627. In *281 Care Committee*, the Eighth Circuit continued:

> Self–Censorship can itself constitute injury in fact. Of course, self-censorship based on mere allegations of a "subjective" chill resulting from a statute is not enough to support standing, and persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs. The relevant inquiry is whether a party's decision to chill his speech in light of the challenged statute was objectively reasonable. Reasonable chill exists when a plaintiff shows an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution.

*Id.* (internal citations and quotation marks omitted).

Sheriff Thom contends that Plaintiffs have not alleged an injury in fact because Plaintiffs admit that they are not inciting anyone to commit imminent violent or forceful actions, that they advocate against the use of violence, and that they plan to advise and encourage others through peaceful methods.

The assertions in Plaintiffs' Complaint meet the requirement of an injury in fact. Plaintiffs allege that they intend to provide funding, training, and other advice and encouragement to individuals who plan to protest the Keystone XL Pipeline, but they fear arrest, prosecution and/or civil liability because the law is vague about the speech and conduct it regulates. Plaintiff Sierra Club alleges that it will err on the side of curtailing its protected speech:

> Sierra Club would be hesitant to engage in many of these forms of protected speech if South Dakota's "riot boosting" laws stand, because it would risk being exposed to civil and criminal liability should authorities or even pipeline companies subjectively decide that the speech somehow contributed to violence.

3

> Similarly, the vague wording of the South Dakota laws would leave Sierra Club unsure about what speech is permissible, such that it would err on the side of curtailing protected speech.

Doc. 1, Complaint at ¶ 66. This self-censorship is objectively reasonable and demonstrates that Plaintiffs' injuries are sufficiently concrete. *See 281 Care Comm.*, 638 F.3d at 628 (plaintiffs' speech was reasonably chilled because they alleged that they wished to engage in conduct and they had reasonable cause to fear the consequences of engaging in such conduct). The Court finds that Plaintiffs have alleged an injury in fact that is sufficient to support standing.

"Under United States Supreme Court precedent, when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated to enforce that rule who is the proper defendant, even when that party has made no attempt to enforce the rule." *American Civil Liberties Union v. Florida Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993) (citing *Diamond v. Charles*, 476 U.S. 54, 64 (1986)); *see also Wilson v. Stocker*, 819 F.2d 943, 947 (10th Cir. 1987) (finding a case or controversy between a plaintiff bringing a pre-enforcement challenge and a state attorney general because the attorney general has enforcement authority). In *Wilson*, the Tenth Circuit reasoned that "a controversy exists not because the state official is himself a source of injury, but because the official represents the state whose statute is being challenged as the source of the injury." 819 F.2d at 947. Thus, the *Wilson* court found that a "plaintiff challenging the constitutionality of a statute has a sufficiently adverse legal interest to a state enforcement officer" to create a substantial controversy when "the plaintiff shows an appreciable threat of injury flowing directly from the statute." *Id.*

Plaintiffs suing state officials can satisfy the second and third requirements of standing, causation and redressability, by demonstrating "a causal connection" between the defendant and the asserted injury. *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015). "[T]he causation element of standing requires the named defendants to possess authority to enforce the complained-of provision," *id.* at 958, and "[t]he redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute," *id.* In *Digital*

*Recognition*, the Eighth Circuit explained that whether a defendant has enforcement authority is related to whether, under *Ex parte Young*, they are proper state officials for suit:

> In a case like this one, the questions of Article III jurisdiction and Eleventh Amendment immunity are related. Article III requires the plaintiff to show a causal connection between the state officials and the alleged injury. The Eleventh Amendment does not preclude jurisdiction over the state officials if there is "some connection" between the officials and enforcement of the challenged state law. This court concluded in one case that where state officials had "some connection with the enforcement" of a state law for purposes of the *Ex Parte Young* doctrine, then the case or controversy requirement of Article III was satisfied. *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006).

*Digital Recognition*, 803 F.3d at 957.

But Sheriff Thom is not a state official, so there is a question about how Plaintiffs can satisfy the second and third standing requirements as to him. In their briefs, both parties assume that the causation and redressability requirements of standing to sue Sheriff Thom are fulfilled if Plaintiffs' allegations against the county, if proven, would constitute an official policy for § 1983 liability under *Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658 (1978). The Court found support for the parties' approach in *Miller v. City of St. Paul*, 823 F.3d 503 (8th Cir. 2016). There, the plaintiff alleged that city defendants violated his First Amendment right to engage in religious speech in a public park. The Eighth Circuit held that because the plaintiff failed to show that he was subject to a credible threat of prosecution pursuant to "official municipal policy of some nature," the plaintiff did not have standing to pursue his claim against the city or against the city's police chief and patrol commander in their official capacities. *Id.* at 506–07, 508. Accordingly, this Court will discuss municipal liability under § 1983 and whether Plaintiffs have alleged a nexus between their injuries and an official policy of Pennington County in order to determine whether they have standing to sue Sheriff Thom in his official capacity.

In *Monell* the Supreme Court held that Congress intended municipalities and other local governmental entities to be included among those persons to whom § 1983 applies.[1] 436 U.S. at 690. At the same time, the Court made it clear that municipalities may not be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. The Court emphasized that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* The Court explained:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694. "Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84 (1986). Where official policy is lacking, municipal liability may be established "through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality 'as to constitute a "custom or usage" with the force of law.'" *McGautha v. Jackson Cty., Mo., Collections Dep't*, 36 F.3d 53, 56 (8th Cir. 1994) (citations omitted).

Relying on *Monell*, Sheriff Thom argues that Plaintiffs fail to satisfy the second and third requirements of standing as to him because they are not challenging a policy or custom of Pennington County.[2] It is true that no official policy or custom of Pennington County is alleged in

---

[1] Section 1983 creates a private right of action against "any person" who, under color of state law, deprives another of rights protected by the Constitution. *Collins v. City of Harker Heights, Tex*, 503 U.S. 115, 120 (1992).

[2] "A plaintiff who sues public employees in their official . . . capacities sues only the public employer and therefore must establish the municipality's liability for the alleged conduct." *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016).

the Complaint, and Plaintiffs admit that their claims against Thom are based for the most part on the fact that the law requires sheriffs to enforce state laws. The Eighth Circuit has not decided under what circumstances a municipality could be liable for enforcing state law. *See Slaven v. Engstrom*, 710 F.3d 772, 781 n.4 (8th Cir. 2013). There, the Eighth Circuit stated:

> Whether, and if so when, a municipality may be liable under § 1983 for its enforcement of state law has been the subject of extensive debate in the circuits. *See Vives v. City of New York*, 524 F.3d 346, 351–53 (2d Cir. 2008) (collecting and analyzing cases). We need not decide whether a municipality may ever be liable for enforcing state law because, here, there is no evidence or even allegation that Hennepin Court [sic] was enforcing state law, as opposed to merely being present in a proceeding where a state court, applying state law, allegedly violated the Slavens' constitutional rights.

*Id.* Thom relies on cases from outside the Eighth Circuit holding that a city's policy of enforcing state law does not trigger § 1983 liability. *See, e.g., Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791–92 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law. If the language and standards from *Monell* are not to become a dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality."); *Bethesda Lutheran Homes & Services, Inc. v. Leean*, 154 F.3d 716 (7th Cir. 1998). In *Bethesda Lutheran*, the Seventh Circuit explained its conclusion in the following manner:

> The plaintiff who wants a judgment against the municipality under that statute must be able to trace the action of the employees who actually injured him to a policy or other action of the municipality itself. When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury. Apart from this rather formalistic point, our position has the virtue of minimizing the occasions on which federal constitutional law, enforced through section 1983, puts local government at war with state government.

*Bethesda Lutheran*, 154 F.3d at 718. As in *Slaven*, this Court need not decide if Pennington County could be liable simply for enforcing state law because there is no allegation that the challenged laws have been enforced by the County or that the County is the moving force behind the Constitutional violation.

In their brief, Plaintiffs assert three theories to support the claim that Pennington County has the equivalent of an official policy that could make it liable under § 1983 pursuant to *Monell*. First, Plaintiffs cite a handbook of official polices from the Pennington County Sheriff's Office. They refer to provisions recognizing "the discretion vested in" the officers and that the officers must "chos[e] between conflicting courses of action." (Plaintiff's Brief, Doc. 36 at 18.) Plaintiffs also argue that the policy manual suggests Pennington County is developing policies relevant to enforcement of the challenged laws because the policy manual states "[t]he Pennington County Sheriff's Office will have written plans for responding to unusual occurrences," including "civil unrest" and "riot." (*Id.*) Second, Plaintiffs point to a press release where Sheriff Thom said he won't arrest people for CBD oil after the Pennington County State's Attorney announced he would not prosecute CBD oil cases. (*Id.* at 19.) Third, Plaintiffs contend that South Dakota's public policy doctrine "recognizes that law enforcement decisions necessarily involve discretion." None of the theories are pleaded in the Complaint and, even if they were, none of the theories adequately allege the equivalent of an official policy or custom in regard to the challenged laws.

The relevant questions in cases involving municipal liability under § 1983 are whether the unconstitutional act "may fairly be said to represent official policy" of that municipality and whether the policy was the "moving force" behind the violation. *Monell*, 436 U.S. at 694. Stated another way, the question is whether there is a "direct causal link" between a municipal policy and the alleged constitutional violation, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989), and a "deliberate choice [by the municipality] to follow a course of action . . . made from among various alternatives." *Pembaur*, 475 U.S. at 483. Applying this standard in this case, Plaintiffs have failed to allege that Pennington County sheriff officials have made any choices at all regarding enforcement of the challenged laws that could cause a violation of Plaintiffs' First Amendment rights. Plaintiffs' allegations show only that a policy choice was made by State officials.

The Governor and the Attorney General do not dispute that they are proper defendants in this case. A decision against the Governor and Attorney General will redress Plaintiffs' alleged injuries. But Plaintiffs' injuries, as currently alleged, are not fairly traceable to Sheriff Thom and would not

be redressed by a decision against him. Accordingly, Plaintiffs do not have standing to assert a claim against Sheriff Thom.³ In the future, if Plaintiffs identify a Pennington County policy, custom or practice that is a "moving force" behind a constitutional violation they suffered, *Monell*, 436 U.S. at 694-95, Plaintiffs may be able to amend their Complaint. Therefore, Plaintiffs' claims against Thom will be dismissed for lack of standing with leave to amend. Accordingly,

**IT IS ORDERED** that Defendant Sheriff Thom's motion to dismiss for lack of standing, doc. 23, is granted with leave for Plaintiffs to file a motion to amend if they identify a Pennington County policy, custom or practice that is a moving force behind a constitutional violation.

Dated this 18th day of September, 2019.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

---

³ This conclusion renders moot Thom's motion to dismiss for failure to state a claim under Rule 12(b)(6).